**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

STEVEN MEDWED, Individually and On
Behalf Of All Others Similarly Situated,

       Plaintiff,

    v.

PRINCIPAL FUNDS, INC., THE PRINCIPAL
FINANCIAL GROUP, and R.C. EUCHER,

       Defendants.

CIVIL ACTION NO. 10-12075-DJC

**DEFENDANTS' MEMORANDUM IN SUPPORT OF**
**MOTION TO DISMISS PLAINTIFF'S COMPLAINT OR, IN THE ALTERNATIVE,**
**TO STRIKE CERTAIN ALLEGATIONS**

Defendants Principal Funds, Inc. ("Principal Funds"); Principal Financial Group, Inc.

("Principal Financial")[1]; and R.C. Eucher (collectively "the Principal Defendants"), by their

attorneys, respectfully submit this memorandum in support of their motion to dismiss Plaintiff's

complaint (the "Complaint") with prejudice and without leave to replead pursuant to Fed. R. Civ.

P. 12(b)(6) for failure to state a claim upon which relief can be granted or, in the alternative,

pursuant to Fed. R. Civ. P. 12(f), to strike the class allegations in the Complaint.

## INTRODUCTION

This is a case brought by a former mutual fund shareholder who is unhappy with the

fund's procedure for redeeming shares by mail. Defendant Principal Funds processes

redemption requests at a processing center in Canton, Massachusetts. It directs shareholders to

send their redemption requests to a post office box and then picks up the requests and brings

them to the processing center, where they are time-stamped upon receipt. Principal Funds fulfills

---

[1] The Complaint erroneously names "The Principal Financial Group." No such entity exists. Plaintiff apparently

shareholders' redemption requests at the next closing price calculated after receipt of the redemption requests at the processing center. Closing prices are calculated once each business day at the close of trading on the New York Stock Exchange. Thus, if a shareholder's redemption request is received at the post office box and is then delivered to and received at the processing center that same day, before the closing price for that day is calculated, the redemption request is fulfilled at that day's closing price. If a shareholder's redemption request is received at the processing center after the closing price for that day is calculated, then the processing center fulfills the request at the closing price calculated for the next business day, whether that price is higher or lower.

Plaintiff Steven Medwed was a shareholder whose redemption request was received at the processing center after that day's closing price had been calculated. His redemption request was therefore fulfilled at the next business day's closing price. The handling of his redemption request was entirely consistent with Principal Funds' long-established, fully disclosed redemption procedures. Unable to concoct any theory under which these eminently reasonable procedures violated SEC rules or regulations, or any obligations owed by the mutual fund to its shareholders, Plaintiff has instead asserted federal securities claims based on an alleged failure to disclose material facts about the redemption procedures.

This lawsuit suffers from several critical flaws, the most fundamental of which is that Principal Funds' redemption procedures were accurately and fully disclosed in the very documents about which Plaintiff complains. According to the prospectus and registration statement on which Plaintiff purportedly bases his Complaint, all redemption requests are processed according to the same procedures: they are fulfilled at the "next price calculated" after

---

seeks to name Principal Financial Group, Inc.

the redemption request is received at the processing center.  There is simply nothing misleading about the disclosures Plaintiff complains about.

Even apart from the absence of any false or misleading statement in the disclosure documents, however, Plaintiff's purported securities claims are defective for additional reasons. Plaintiff alleges that he bought his shares six years before the allegedly flawed prospectus was issued and the registration statement amendment containing that prospectus became effective. Thus, Plaintiff did not *buy* any mutual fund shares pursuant to the documents he alleges contain false or misleading statements.  At most, he *redeemed* shares while those documents were in effect.  Plaintiff makes no allegation that the disclosure statements pursuant to which he *purchased* his shares were misleading.

It is also abundantly clear from the face of the Complaint that any loss Plaintiff suffered was not caused by the alleged misleading statements.  To the extent Plaintiff suffered a loss because his redemption request was fulfilled at a price lower than the price calculated on the previous day, it is solely a function of the performance of the mutual fund in the intervening day and is entirely unrelated to whether the description of the mutual fund's redemption procedures was misleading.  Unlike a common stock whose price trades in an open market based on available information, the price of mutual fund shares is dictated by a statutory formula that is not affected by what information is or is not included in the disclosures about the mutual fund.

Plaintiff's claims are also barred by the one-year statute of limitations.  Plaintiff alleges that he wrote a detailed letter complaining about Principal's procedure for redeeming shares by mail, and previewing the precise allegations of this lawsuit, on November 20, 2009 – more than one year before he sued on December 1, 2010.

In addition to these defects which affect all of Plaintiff's claims, there are two additional defects that concern specific portions of the Complaint.  Plaintiff's "controlling person" claims under Section 15 of the 1933 Act fail for the same reasons as the underlying claims, but also fail for the separate reason that neither purported Section 15 Defendant meets the definition of a "controlling person."  Further, Plaintiff's class action allegations should be stricken because Plaintiff has not complied with the procedural requirements for putative securities class actions, which require a certification to be filed with the complaint.

## ALLEGATIONS OF THE COMPLAINT[2]

Principal Funds is an open-end investment company, commonly referred to as a "mutual fund," that offers various classes of shares to shareholders.  *See* Cmplt. ¶¶ 2, 14.  Plaintiff alleges that he acquired an unspecified number of shares of Principal Funds in July 2003 and that he redeemed his shares in 2009.  *Id.* ¶ 27.  The Complaint challenges the disclosures concerning Principal Funds' redemption procedures set forth in its Prospectus for Class A, B and C Shares dated March 1, 2009 (the "Prospectus"), and the related Post-Effective Amendment to Principal Funds' Registration Statement for those shares on Form N-1A, which is identical to the Prospectus in all material respects.  *Id.* ¶ 1.  A copy of the Post-Effective Amendment, which includes the Prospectus, is attached as Exhibit 1 and may also be accessed at http://www.sec.gov/Archives/edgar/data/898745/000089874509000066/abc-all.htm.[3]  For simplicity, this memorandum will cite to the Prospectus.

As explained in the Prospectus, Principal Funds allows shareholders to redeem shares through several methods, including by telephone and by mail.  Ex. 1 at 190-91.  To redeem

---

[2] By summarizing the allegations of the Complaint, which are taken as true for purposes of the motion to dismiss, *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993), the Principal Defendants do not admit or concede the truth of the allegations.

[3] On a motion to dismiss, courts may look beyond the pleadings to documents referenced in the Complaint.

shares by mail, the Prospectus instructs shareholders to send a written redemption request to Principal Funds at P.O. Box 8024, Boston, MA 02266-8024.  Ex. 1 at 190; *see also* Cmplt. ¶ 3. The Prospectus goes on to explain that redemption requests sent to the post office box will be processed at a processing center in Canton, Massachusetts.  Ex. 1 at 192, 194; *see also* Cmplt. ¶ 5.

The price at which a redemption request is fulfilled is the "next price [Principal Funds] calculate[s] after we receive the order" in Canton.  Ex. 1 at 194; *see also* Cmplt. ¶ 5.  That price "is determined as of the close of business of the NYSE (normally 3:00 p.m. Central Time)" on the day of receipt in Canton.  Ex. 1 at 194; *see also* Cmplt. ¶ 5.

Plaintiff alleges that he mailed a redemption request by regular mail (not by Express Mail for next day delivery) to the post office box which was time- and date-stamped at Canton at 5:01 P.M. EST on September 30, 2009 (*i.e.*, more than an hour after close of business of the NYSE). *Id.* ¶ 27.  He further alleges that his request was fulfilled at the closing price calculated for October 1, 2009.  *Id.*  Plaintiff asserts that the closing price calculated for October 1, 2009 was lower than the closing price calculated for September 30, 2009, and that he incurred a $4,680 loss because his redemption request was fulfilled at the October 1 closing price rather than the September 30 closing price.  *Id.* ¶ 33.  He claims that his loss was a "direct result" of purportedly "false and misleading" disclosures in the Prospectus regarding Principal Funds' procedure for redeeming shares by mail.  *Id.* ¶ 35.  Specifically, he alleges that "the Prospectus misleads shareholders by directing them to mail sale orders to a Boston P.O. Box without disclosing that those redemption orders . . . will receive a trade date on the following day after they are shipped to a processing center in Canton."  *Id.* ¶ 28.   Plaintiff purports to bring this case as a class action

---

*Giragosian v. Ryan*, 547 F.3d 59, 65 (1st Cir. 2008).

on behalf of himself and all other individuals who redeemed their shares through the same process and "suffered losses as a result of applying the later trading date." *Id.* ¶ 17.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint's allegations must "plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Otherwise stated, Plaintiff must plead sufficient "factual content [to] allow[] the court to draw the reasonable inference that the defendant[s are] liable for the misconduct alleged." *Sanchez v. Pereira-Castillo*, 590 F.3d 31, 48 (1st Cir. 2009) (quoting *Iqbal*, 129 S. Ct. at 1949).

## ARGUMENT

**I.    PLAINTIFF FAILS TO STATE A CLAIM UNDER SECTIONS 11 OR 12(a)(2) OF THE SECURITIES ACT OF 1933.**

Plaintiff's primary claims (Claims I and II) are brought under Section 11 of the Securities Act of 1933, which provides for civil liability "on account of false registration statement[s]," and Section 12(a)(2) of that Act, which provides for civil liability "arising in connection with prospectuses" used to "offer[] or sell[] a security." 15 U.S.C. §§ 77a, 77k, 77l. Plaintiff's claims under Sections 11 and 12(a)(2) fail for three independent reasons: (a) Plaintiff fails to identify a misleading representation or omission in the Registration Statement or Prospectus; (b) Plaintiff fails to allege that he purchased shares pursuant to the Registration Statement or Prospectus; and (c) Plaintiff fails to plead that the allegedly misleading Registration Statement or Prospectus caused his losses.

### A.    Plaintiff Fails to Allege a False or Misleading Representation in the Registration Statement or Prospectus.

Plaintiff has not alleged that Principal Funds made any false statement of material fact. Instead, Plaintiff alleges that the Prospectus was misleading in two respects.  Both allegations fail, however, because they fail to plead an actionable misleading statement.

First, Plaintiff alleges that "the Prospectus misleads shareholders by directing them to mail sale orders to a Boston P.O. Box without disclosing that those redemption orders will not receive a trade date on the date that they arrive at the P.O. Box but instead will receive a trade date on the following day after they are shipped to a processing center in Canton."  Cmplt. ¶ 28. But, as Plaintiff admits, the Prospectus clearly discloses that "[w]hen an order to buy or sell shares is received, the share price used to fill the order is the next price we calculate *after we receive the order at our transaction processing center in Canton, Massachusetts.*"  *Id.* ¶ 5 (quoting Prospectus at 194) (emphasis added).  According to the Prospectus, "[t]he share price is determined as of close of business of the NYSE (normally 3:00 p.m. Central Time)."  *Id.*

Contrary to Plaintiff's allegations, there is absolutely nothing "misleading" about the discussion of redemption procedures in the Prospectus.  The post office box in Boston to which redemption requests are to be sent and the transaction processing center in Canton are two different places.  Receipt of a redemption request at a post office box in Boston is not the same as receipt of the request at the processing center in Canton.  The Prospectus does not suggest, and no reasonable person would read as it as suggesting, that each redemption request received at the post office box in Boston is simultaneously received, or instantaneously delivered to and received, in Canton.  The share price used to determine the amount of the redemption is the next price calculated *after* receipt of the request in Canton, *not* the price in effect at the time of receipt of the redemption request at the post office box in Boston.  Because Plaintiff's "complaint fail[s]

to plead facts that, if true, would constitute a misrepresentation . . . and does nothing more than offer the legal conclusion that the representation in the prospectus was somehow misleading[,]" it should be dismissed.  *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1194 (11th Cir. 2002); *see also AIG Global Sec. Lending Corp. v. Banc of Am. Sec. LLC*, 254 F. Supp. 2d 373, 382 (S.D.N.Y. 2003) (dismissing securities fraud claims where "[t]he plaintiffs have failed to allege, in any specific sense, why these representations were in fact fraudulent").

Second, Plaintiff alleges that "[t]he Prospectus also fails to disclose that Principal Funds accepts redemption requests from those wanting to redeem more than $100,000 in holdings by mail or delivered directly to its Canton office."  Cmplt. ¶ 8.  But the same closing-price procedures apply to mail sent directly to Canton, and the Prospectus' explanation of those procedures, as detailed above, is not misleading.[4]

Moreover, Plaintiff's bare allegation about the acceptance of redemption requests sent directly to Canton, without further explication, falls far short of the pleading requirements imposed by the Private Securities Litigation Reform Act ("PSLRA").  15 U.S.C. § 78u-4.  The PSLRA requires that:

> [T]he complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.

15 U.S.C. § 78u-4(b)(1); *see In re SeaChange Int'l, Inc.*, No. Civ.A. 02-12116-DPW, 2004 WL 240317, at *3 (D. Mass. Feb. 6, 2004) ("Section 78u-4(b)(1) . . . imposes a heightened pleading requirement on all § 11 and § 12(a)(2) claims arising out of alleged misrepresentations or omissions.").

---

[4] Plaintiff has not alleged, nor could he, that his redemption request would have been fulfilled at a different price if he had sent it directly to Canton rather than to the Boston post office box.

Plaintiff's allegation about the acceptance of redemption requests sent directly to Canton is based on information and belief.[5]   The Complaint does not, as it must, "state with particularity" the facts on which this allegation is based.  In fact, the Complaint fails to state anything specific about the alleged omission whatsoever, including how, if at all, it relates to Plaintiff's experience with Principal Funds' redemption procedures.  This allegation accordingly cannot support a claim under Section 11 or Section 12.  *See In re SeaChange*, 2004 WL 240317, at *3.

**B.   Plaintiff Fails to Allege that He Acquired Shares Pursuant to the Allegedly Defective Registration Statement or Prospectus.**

The 1933 Act protects purchasers of securities, not those who already own the security when an allegedly misleading prospectus or registration statement is issued or becomes effective. Plaintiff's Complaint warrants dismissal for a second, independent reason:  he does not – and cannot – plead that he acquired any shares pursuant to the Registration Statement or Prospectus.

Section 11 protects persons "acquiring" a security and gives them a cause of action for false or misleading statements in the registration statement in effect when they acquired the security.  15 U.S.C. § 77k.  Plaintiff's claims, however, are based on a registration statement amendment that did not become effective until March 1, 2009 – some six years after Plaintiff alleges that he acquired the mutual shares at issue.  *See* Cmplt. ¶¶ 25, 27, 29.  Because the 2009 amendment to the registration statement about which Plaintiff complains was not effective at the time Plaintiff acquired his mutual fund shares, Plaintiff's Section 11 claim must be dismissed. *See APA Excelsior III L.P. v. Premiere Techs., Inc.*, 476 F.3d 1261, 1276 (11th Cir. 2007) ("It is undisputed that if stock is purchased in a prior offering, and before a defective registration statement is issued, then no relief may be had as the pre-registration purchaser falls outside the

---

[5] Plaintiff's Complaint is "based upon knowledge as to his own acts and upon information and belief as to all other

scope of Section 11."); *see also In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1164-65 (C.D. Cal. 2008) (holding that, with respect to new issuance associated with new registration statement, "buyers that can trace their purchase to the second effective date have a claim while those who can only trace their purchase to the first do not"); *Turner v. First Wis. Mortgage Trust*, 454 F. Supp. 899, 911 (E.D. Wis. 1978) (plaintiff failed to state cause of action under Section 11 where she purchased shares prior to registered offering).

Similarly, Section 12(a)(2) imposes liability on "[a]ny person who . . . offers or sells a security" using interstate commerce or the mail "by means of a prospectus" that includes a materially misleading statement or omits a material fact "to the person purchasing such security from him . . . ."  15 U.S.C. § 77*l*(a)(2).   Just as Plaintiff did not "acquire" his mutual fund shares while the allegedly misleading registration statement was effective, Principal Funds likewise did not "offer or sell" mutual fund shares to Plaintiff "by means of" the allegedly misleading Prospectus, which was not issued until six years after Plaintiff bought his shares.   Accordingly, Plaintiff cannot state a claim under Section 12(a)(2).  *See DiJulio v. Digicon, Inc.*, 339 F. Supp. 1284, 1291 (D. Md. 1972) ("[n]one of the plaintiffs has standing . . . because they purchased their stock before the occurrence of any of the events" that they claim should have been disclosed).

## C.      The Absence of Loss Causation Defeats Plaintiff's Claims.

Under the 1933 Act, the absence of loss causation bars a Section 11 or 12 claim if the depreciation in the security's value did not result from a misleading statement.  Plaintiff's own allegations demonstrate that his claims are barred by the absence of loss causation.

---

matters."  Cmplt., p. 1.  Plaintiff did not send his redemption request directly to Canton.  *Id*. ¶ 25.

Loss causation is not an essential element of a 1933 Act claim, but absence of loss causation is an affirmative defense to a 1933 Act claim. *Freeland v. Iridium World Commc'ns, Ltd.*, 233 F.R.D. 40, 46 (D.D.C. 2006) ("The absence of loss causation is an affirmative defense under both Section 11 and 12 of the Securities Act rather than an element of Plaintiff's prima facie case."). Where the absence of loss causation is apparent from the face of the complaint, as in this case, it may be raised on a motion to dismiss. *See, e.g.*, *Stumpf v. Garvey*, No. 03-CV-1352-PB, 2006 WL 39237, at *1 (D.N.H. Jan. 6, 2006); *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 272 F. Supp. 2d 243, 254 (S.D.N.Y. 2003) (dismissing a Section 11 claim where the security's loss in value was caused by something other than the misstatement in the prospectus).

Plaintiff's allegations make clear that any "damages" he incurred under his theory of liability simply are not recoverable under Section 11 or Section 12(a)(2) because the statutory loss causation defense bars any recovery. Under Section 11(e)(2), the loss causation defense provides that:

> [I]f the defendant proves that any portion or all of such damages represents other than the depreciation in value of such security resulting from such part of the registration statement . . . not being true or omitting to state a material fact required to be stated therein or necessary to make the statements therein not misleading, such portion of or all such damages shall not be recoverable.

15 U.S.C. § 77k(e). Section 12(b) similarly bars or reduces any portion of a plaintiff's recovery that the defendant proves "represents other than the depreciation in value of the subject security resulting from such part of the prospectus . . . not being true or omitting to state a material fact required to be stated therein or necessary to make the statement not misleading." 15 U.S.C. § 77*l*(b).

No part of the damages sought in this case are damages for the "depreciation in value" of Plaintiff's mutual fund shares "resulting from" any part of the Prospectus (or the related amendment to the Registration Statement) "not being true" or omitting material facts necessary to make the disclosures not misleading. The damages sought here result solely from the difference between the closing price on September 30, 2010 and the closing price on October 1, 2010. Unlike the prices of stocks and bonds that are traded on an open market at prices affected by the issuer's public disclosures, the securities in this case were mutual fund shares whose price was calculated according to a statutory formula prescribed by the Investment Company Act of 1940. *See* 15 U.S.C. § 80a-2(a)(41). As one court has explained:

> Unlike an ordinary share of stock traded on the open market, the value of a mutual fund share is calculated according to a statutory formula. Share price is a function of "Net Asset Value", the pro-rata share of assets under management, minus liabilities such as fees.

*In re Morgan Stanley & Van Kampen Mut. Fund Sec. Litig.*, 03 Civ. 8208, 2006 U.S. Dist. LEXIS 20758, at *35-36 (S.D.N.Y. Apr. 18, 2006). The statutory formula for calculating mutual fund prices eliminates any possibility that the prices at which mutual fund shares are either bought or sold somehow "result from" misrepresentations about the mutual fund in its prospectus or registration statement. Thus, as numerous courts have recognized, the loss causation defense available to defendants under the 1933 Act effectively precludes Section 11 and Section 12 liability in cases involving mutual funds. *See, e.g.*, *In re Salomon Smith Barney Mut. Fund Fees Litig.*, 441 F. Supp. 2d 579, 589-90 (S.D.N.Y. 2006); *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 272 F. Supp. 2d at 253-54; *In re Van Wagoner Funds, Inc. Sec. Litig.*, 382 F. Supp. 2d 1173, 1188 (N.D. Cal. 2004); *In re Morgan Stanley & Van Kampen Mut. Fund Sec. Litig.*, 2006 U.S. Dist. LEXIS 20758, at *35-36; *In re Merrill Lynch Inv. Mgmt. Funds Sec. Litig.*, 434 F. Supp. 2d 233, 238 (S.D.N.Y. 2006) (dismissing 1933 Act claims for failure to

plead loss causation where "plaintiffs have not tied the investment performance of any fund to the alleged misrepresentations and omissions"); *but see In re Evergreen Ultra Short Opportunities Fund Sec. Litig.*, 705 F. Supp. 2d 86, 91 (D. Mass. 2010) (declining to hold that loss causation defense bars 1933 Act liability in all mutual fund cases).

Even if this Court does not follow the cases holding that the loss causation defense precludes 1933 Act liability in mutual fund cases as a general matter, the absence of loss causation is indisputable in this case. Plaintiff's claimed damages are based on the difference between the Net Asset Value of Principal Funds' shares on September 30, 2009 and October 1, 2009. Net Asset Value is defined by statute as "the pro-rata share of assets under management, minus liabilities such as fees." *In re Morgan Stanley & Van Kampen Mut. Fund Sec. Litig.*, 2006 U.S. Dist. LEXIS 20758, at *35-36. The allegedly misleading representations in this case concern redemption procedures, which cannot possibly affect the statutorily defined Net Asset Value. Thus, regardless of whether this Court accepts the broad proposition that the loss causation defense necessarily precludes all 1933 Act claims involving mutual funds, or focuses more narrowly on Plaintiff's specific allegations in evaluating whether any part of Plaintiff's damages could have "resulted from" the alleged misrepresentations, it is clear that the statutory loss causation defense bars Plaintiff's recovery in this case.

## II.     PLAINTIFF'S CLAIMS UNDER SECTIONS 11 AND 12(A)(2) ARE BARRED BY THE STATUTE OF LIMITATIONS.

Section 13 of the Securities Act bars actions under Sections 11 and 12(a)(2) of the Securities Act "unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable

diligence." 15 U.S.C. § 77m.  Plaintiff's own allegations demonstrate, however, that he brought his claims more than a year after discovering them.[6]

On the face of the Complaint, it is clear that Plaintiff discovered the alleged violation more than one year before he filed suit on December 1, 2010.  Plaintiff alleges that he sent a letter dated November 20, 2009 to Principal Funds Distributor, Inc. complaining that a redemption request received at Principal Funds post office box on September 30, 2009 was fulfilled at the closing price calculated on October 1, 2009.  Cmplt. ¶ 27.  Plaintiff alleges that the redemption procedures were explained to him by the Vice President of Mutual Fund Operations for Principal Funds, who referred Plaintiff to the language of the Prospectus.  *Id*. ¶ 29.  Thus, it is indisputable that no later than November 20, 2009, Plaintiff had either discovered the alleged untrue statement or omission on which his claims are based, or should have made such discovery by the exercise of reasonable diligence.  Accordingly, Plaintiff's claims are time-barred and must be dismissed.

**III.**  **PLAINTIFF FAILS TO STATE A CLAIM UNDER SECTION 15 OF THE SECURITIES ACT OF 1933.**

To properly plead a Section 15 violation, Plaintiff must allege (1) an underlying violation of Section 11 or 12(a)(2) of the Securities Act, and (2) that the Principal Defendants were "controlling persons"—that is, that Defendants exercised control over the primary violator of § 11 or § 12(a)(2).  *Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*, 658 F. Supp. 2d 299, 310 (D. Mass. 2009).  Plaintiff's Section 15 claims (Claim III) do not satisfy either element.

---

[6] Although the statute of limitations is an affirmative defense, it may be raised in a motion to dismiss where, as here, Plaintiff's own allegations make clear that his claim is time-barred.  *Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc.*, 524 F.3d 315, 320 (1st Cir. 2008).

A.     **Plaintiff's Failure to State a Claim Under Sections 11 or 12 of the Securities Act Bars His Claims Under Section 15.**

Where, as here, there is no viable claim under either Section 11 or Section 12(a)(2) of the Securities Act, there can be no valid claim under Section 15.  *Dennis v. Gen. Imaging, Inc.*, 918 F.2d 496, 509 (5th Cir. 1990) (where the "plaintiff can maintain no Section 12 . . . violation[] against either [of the defendants], none of the defendants can possibly be held liable under Section 15 since there are no actual violators of the securities laws to be held liable with"); *see also In re Salomon Smith Barney Mut. Fund Fees Litig.*, 441 F. Supp. 2d at 591 (same). Accordingly, the Section 15 claims should be dismissed.

B.     **Plaintiff Fails to State a Claim Against a "Controlling Person."**

Plaintiff's Section 15 claims should be dismissed for the additional reason that Plaintiff has not adequately alleged that either R.C. Eucher or Principal Financial is a controlling person of Principal Funds for purposes of the conduct claimed to give rise to the liability of Principal Funds.  Section 15 of the Securities Act imposes liability only against persons who "control" a person or entity liable under Section 11 or 12 of the Act.  15 U.S.C. § 77o (2000).  Control is not measured by status as an owner or officer of a controlled person; rather, to be held liable as a control person under Section 15, a defendant must have been "in some meaningful sense a culpable participant in the primary violation."  *Boguslavsky v. Kaplan*, 159 F.3d 715, 720 (2d Cir. 1998) (internal quotation marks and citations omitted).

Plaintiff does not claim that Principal Financial committed any act that could give rise to liability under any of the theories in the complaint.  Instead, Plaintiff simply alleges that Principal Financial is "the parent company of Principal Funds" (Cmplt. ¶ 15), and rests his theory of liability for Principal Financial on the factual allegations against Principal Funds.  Even

taking this allegation as true,[7] "[t]he parent/subsidiary relationship is an insufficient basis from which to infer control because a parent corporation and its subsidiary are regarded as legally distinct entities." *Pub. Employees' Ret. Sys. of Miss. v. Merrill Lynch & Co.*, 714 F. Supp. 2d 475, 485 (S.D.N.Y. 2010) (dismissing Section 15 claim for lack of control person liability); *see also United States v. Bestfoods*, 524 U.S. 51, 61 (1998) ("It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation . . . is not liable for the acts of its subsidiar[y].") (internal quotation marks omitted).  Nor does the Complaint allege that Principal Financial engaged in any conduct that could make it a "culpable participant" in the alleged securities violations of Principal Funds.

Plaintiff's Section 15 claim against R.C. Eucher, who at time the Prospectus was issued was Chief Executive Officer and Chairman of the Board of Directors of Principal Funds, is similarly deficient.  Mr. Eucher's executive position is insufficient to demonstrate control. *Garvey v. Arkoosh*, 354 F. Supp. 2d 73, 86 n.18 (D. Mass. 2005) ("Status as an officer or director does not by itself establish control of an entity.");[8] *see also In re Tyco Int'l, Ltd. Multidistrict Litig.*, No. MDL 02-1335-B, 2004 WL 2348315, at *17 (D. N.H. Oct. 14, 2004) (allegation of control based on membership of former CEO on board of directors insufficient to withstand dismissal); *In re Metawave Commc'ns Corp. Sec. Litig.*, 298 F. Supp. 2d 1056, 1087, 1091 (W.D. Wash. 2003) (mere allegation that defendant was an officer insufficient to plead control person liability).  And the sole remaining allegation about Mr. Eucher, that he "signed the Registration Statement on February 27, 2009" (Cmplt. ¶ 16), is not enough to buttress Plaintiff's

---

[7] In fact, like all mutual funds, Principal Funds is owned by its shareholders, not by Principal Financial. *See In re Franklin Mut. Funds Fee Litig.*, 388 F. Supp. 2d 451, 455 (D. N.J. 2005) ("A mutual fund consists of a pool of assets, usually in the form of a portfolio of investments, that is owned by its shareholders.").

[8] While *Garvey* dealt with control person liability under Section 20(a), not Section 15, the sections are "analogous, and the two provisions are interpreted in the same manner and use the same test for control person liability." *In re Tyco Int'l, Ltd.*, No. 04-cv-1336-PB, 2007 WL 1687775, at *8 n.10 (D. N.H. June 11, 2007) (citing *Maher v. Durango Metals, Inc.*, 144 F.3d 1302, 1305 nn. 5-7 (10th Cir. 1998)).

claim of control.  *See Boilermakers Nat'l Annuity Trust Fund v. WaMu Mortgage Pass Through Certificates, Series AR1*, No. C09-00037MJP, 2010 WL 3815796, at *9 (W.D. Wash. Sept. 28, 2010) (allegation that officers or directors signed registration statement insufficient to plead control); *Picard Chem. Inc. Profit Sharing Plan v. Perrigo Co.*, 940 F. Supp. 1101, 1135 (W.D. Mich. 1996) (dismissing control person claims where director was "merely alleged to have signed Registration Statements, served on the Audit, Nominating, and Compensation Committee, and sold a sizable amount of stock during the class period").  For these reasons, the Section 15 claim against Mr. Eucher should be dismissed.

IV.    **PLAINTIFF'S CLASS ACTION ALLEGATIONS SHOULD BE STRICKEN BECAUSE PLAINTIFF HAS NOT FILED A CERTIFICATION AS REQUIRED BY THE PSLRA.**

The PSLRA requires that plaintiffs bringing a putative securities class action file a certification with the Complaint.  15 U.S.C. § 77z-1(a)(2); *see also Brody v. Homestore, Inc.*, CV 02-08068 FMC (JWJx), 2003 WL 22127108, at *3 (C.D. Cal. Aug. 8, 2003) (striking class action allegations in case bringing claims under Sections 11, 12, and 15 for failure to comply with PSLRA).  That certification must contain a sworn statement that:

> (i) states that the plaintiff has reviewed the complaint and authorized its filing; (ii) states that the plaintiff did not purchase the security . . . at the direction of plaintiff's counsel or in order to participate in any private action arising under this subchapter; (iii) states that the plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary; (iv) sets forth all of the transactions of the plaintiff in the security . . . during the class period . . . ; (v) identifies any other action under this subchapter, filed during the 3-year period preceding the date on which the certification is signed by the plaintiff, in which the plaintiff has sought to serve, or served, as a representative party on behalf of a class; and (vi) states that the plaintiff will not accept any payment for serving as a representative party on behalf of a class beyond the plaintiff's pro rata share of any recovery . . . .

15 U.S.C. § 77z-1(a)(2)(A).  Plaintiff did not file a certification; nor did he include any of the above information in his Complaint.  Accordingly, the class action allegations in the Complaint should be stricken.  *See Brody*, 2003 WL 22127108, at *3 (striking class action allegations in case bringing claims under Sections 11, 12, and 15 for failure to comply with PSLRA).

<u>**CONCLUSION**</u>

For the foregoing reasons, the Principal Defendants' motion to dismiss with prejudice and without leave to replead or, in the alternative, strike certain allegations should be granted.

Dated: March 4, 2011                          Respectfully submitted,

                                              PRINCIPAL FUNDS, INC., PRINCIPAL
                                              FINANCIAL GROUP, INC. and R.C. EUCHER

                              By:     /s/ Linton J. Childs
                                      One of their attorneys

                                      Peter E. Gelhaar
                                      Michael S. D'Orsi
                                      Donnelly, Conroy & Gelhaar, LLP
                                      1 Beacon Street, 33rd Floor
                                      Boston, Massachusetts  02108
                                      Tel: (617) 720-2880
                                      Fax: (617) 720-3554
                                      peg@dcglaw.com
                                      msd@dcglaw.com

                                      Joel S. Feldman (admitted pro hac vice)
                                      Linton J. Childs (admitted pro hac vice)
                                      Jason M. Adler (admitted pro hac vice)
                                      Sidley Austin LLP
                                      One South Dearborn Street
                                      Chicago, Illinois 60603
                                      Tel:  (312) 853-7000
                                      Fax:  (312) 853-7036
                                      jfeldman@sidley.com
                                      lchilds@sidley.com
                                      jadler@sidley.com

## <u>CERTIFICATE OF SERVICE</u>

     I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on March 4, 2011.


                        <u>/s/ Linton J. Childs</u>
                        Linton J. Childs